■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

MARK SMITH, Also Known as DAVID EARLY, Appellant. [595 NYS2d 468] —Judgment, Supreme Court, New York County (Franklin R. Weissberg, J., at *Wade* hearing; Harold J. Rothwax, J., at trial and sentence), rendered April 18, 1990, convicting defendant, after a jury trial, of robbery in the second degree (Penal Law § 160.10 [1]), and sentencing him, as a second violent felony offender, to an indeterminate term of imprisonment of from 7½ to 15 years, affirmed.

By Indictment No. 10165/89, filed September 11, 1989, defendant was charged with the crimes of robbery in the first and second degrees. The charges stemmed from an incident which occurred on September 3, 1989, at approximately 6:00 A.M., when the complainant was grabbed from behind as he used a public telephone on 115th Street and Lenox Avenue in Manhattan. Complainant was hit on the back of his neck with a hard object, pushed into a building, and beaten and robbed of cash, jewelry, and other items. The following evening, defendant was identified by the complainant and placed under arrest.

Defendant's first attorney, who filed an omnibus motion on his behalf on October 11, 1989, was relieved at defendant's request on November 14, 1989. Two weeks later, new counsel was appointed.

The issue which divides us is whether the court should have appointed a further new third counsel and how it should have proceeded in that connection.

As was stated in *People v Arroyave* (49 NY2d 264, 271): "Although a defendant has the constitutionally guaranteed right to be defended by counsel of his own choosing, this right is qualified in the sense that a defendant may not employ such right as a means to delay judicial proceedings. The efficient administration of the criminal justice system is a critical concern to society as a whole, and unnecessary adjournments for the purpose of permitting a defendant to retain different counsel will disrupt court dockets, interfere with the right of other criminal defendants to a speedy trial, and inconvenience witnesses, jurors and opposing counsel. While it has been stated that 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality' *(Ungar v Sarafite,* 376 US 575, 589), it is equally true that the constitutional right to defend by counsel of one's own choosing does not bestow upon a criminal defendant the absolute right to demand that his trial be delayed while he selects another

attorney to represent him at trial. (See, e.g, *United States v Bragan,* 499 F2d 1376, 1379, *supra.)* Whether a continuance should be granted is largely within the discretion of the Trial Judge (see, e.g., *People v Crown,* 51 AD2d 588; *People v Gordon,* 262 App Div 534, *supra;* cf. *People v Singleton,* 41 NY2d 402, 405), and the question whether a defendant has been denied his right to retain counsel of his own choosing can only be answered by examining the particular facts of each case."

More recently, the Court of Appeals in its memorandum decision in *People v Sides* (75 NY2d 822, 824), stated: "The right of an indigent criminal defendant to the services of a court-appointed lawyer does not encompass a right to appointment of successive lawyers at defendant's option *(see, People v Sawyer,* 57 NY2d 12, 18-19). Nevertheless, the right to be represented by counsel of one's own choosing is a valued one, and a defendant may be entitled to new assigned counsel upon showing 'good cause for a substitution,' such as a conflict of interest or other irreconcilable conflict with counsel *(People v Medina,* 44 NY2d 199, 207). Such requests may not be used merely to delay the orderly administration of justice, and while they are not to be granted casually the trial court in exercising its discretion to grant or deny must carefully evaluate seemingly serious requests in order to ascertain whether there is indeed good cause for substitution."

In the case at bar, the court had a clear picture of the "nature of the disagreement" between defendant and counsel and its "potential for resolution" *(People v Sides,* 75 NY2d, *supra,* at 825). The court was aware that this was not the first attorney with whom defendant had expressed dissatisfaction. The previous first attorney who had been characterized by the court as competent to represent the defendant had been objected to and substituted on the defendant's complaint.

The objection to the current second attorney was not based on incompetence, but on disagreement as to appropriate defense tactics, which reason "the court was free to regard as insufficient cause for a cognizable claim of lack of confidence." *(People v Medina,* 44 NY2d 199, 209, *supra.)*

The trial court was in the best position to determine the genuineness of the defendant's objection to his counsel *(see, People v Batista,* 191 AD2d 317).

We have considered appellant's other points regarding his claim of ineffective assistance of counsel and the prosecutor's reference, in summation, to his failure to call an alibi witness

and find them to be without merit. Concur—Sullivan, J. P., Wallach and Kupferman, JJ.

Kassal and Rubin, JJ., dissent in a memorandum by Kassal, J., as follows: The majority misperceives the issue dividing us. The question is not whether the trial court should have appointed another lawyer and "how it should have proceeded in that connection", but whether the court's failure to "make some minimal inquiry" regarding the "nature of the disagreement or its potential for resolution" *(People v Sides,* 75 NY2d 822, 825), resulted in an inability to properly determine whether defendant had a genuine basis for this relief, or was simply engaging in dilatory tactics *(see, People v Arroyave,* 49 NY2d 264, 271-272; *People v Medina,* 44 NY2d 199, 208; *People v Williams,* 114 AD2d 870).

When defendant made his second request for new counsel at the commencement of the *Wade* hearing on February 28, 1990, the hearing court denied his application on the ground that defendant had been advised that "[this attorney] would be his final counsel in this case". At the conclusion of the hearing, it was defense counsel who asked to be relieved, stating that he did not think that certain things defendant demanded were "proper for counsel to do", that "[defendant] has been discourteous, disrespectful, and abusive and for those reasons I don't care to represent him," that it was "almost an impossibility to get along with [defendant]", and that the "differences are monumental". Again, the hearing court summarily denied the motion to relieve counsel, and set the matter down for trial.

During the trial, several events occurred which defendant now argues were caused by counsel's ineffectiveness and/or continuing antagonism. Among the appellate issues raised in this context, and which have not been addressed by the majority, are that counsel violated the attorney-client privilege and sabotaged his alibi defense. The claim of ineffectiveness, particularly in light of the mutual and escalating antagonism apparent from the record, may have resulted in behavior on the part of counsel that was clearly inimical to defendant's interests. Thus, for example, when asked about defendant's alibi witness, counsel revealed to the Judge that the witness "was not sure whether the defendant was with her or not at the time of the robbery", prompting defendant to interject, "She's sure now your Honor".

The spectacle of defense counsel and his client disagreeing and bickering in open court is further demonstrated by counsel's contradiction of defendant's assertion to the court that

they had not consulted since a prior court appearance, and his admonitions to defendant not to interrupt him. Counsel was also placed in a position of having to justify his own actions by condemning those of his client (*e.g.*, "He is always telling me * * * to do * * * things * * * I think are not proper") and generally making defendant out to be a liar.

Despite the obvious problem, neither the Hearing nor the Trial Judge made even minimal inquiry to determine whether defendant's right to counsel was being violated because of the difficulties between defendant and counsel. As a result, it is unclear how this may or may not have affected defense counsel's trial strategy and conduct. In this context, I note that the Trial Judge remarked at one point, "I shouldn't be the only one who's thinking about this case you know. I mean it seems to me I am constructing each of your summations. I am indicating what your defenses are".

For all of these reasons, I believe that defendant's right to counsel was not adequately protected when the hearing court summarily denied the applications to appoint new counsel. Faced with the claims, raised by both defendant and counsel, of irreconcilable conflict and a breakdown in the trust and communication that is critical to every attorney-client relationship, it was incumbent upon the hearing court to explore the matter, even if only minimally and limited to the degree necessitated by attorney-client privilege *(People v Sides, supra)*.